Dear Senator Landry:
You have requested an opinion of the Attorney General regarding the Federal Aviation Administration Authorization Act of 1994 (Act). You state that one of the provisions of the Act, namely, Section 601, contains preemptive language which will impact the state's regulation of intrastate motor carriers (i.e., trucking) when it becomes effective on January 1, 1995. You ask several questions, all of which relate to the impact Section 601 will have upon this state's regulatory taxes and fees and/or the authority, vel non, of the Louisiana Public Service Commission (PSC) to regulate intrastate motor carriers. Prior to addressing your questions, we offer the following synopsis of Section 601.
Currently, 41 jurisdictions, including Louisiana, regulate, in varying degrees, intrastate prices, routes and services of motor carriers. Congress cited the need for Section 601 as a result of a patchwork of regulation and the recent case of FederalExpress Corporation v. California Public UtilitiesCommission, 936 F.2d 1075 (9th Cir., 1991), cert. denied,112 S.Ct. 2956 (1992). It was felt that preemption legislation would be in the public interest, as well as necessary to alleviate the burden on interstate commerce.
Consequently, Congress enacted Section 601. The following excerpts of same are found to be relevant to your opinion request:
SEC. 601. PREEMPTION OF INTRASTATE
 TRANSPORTATION OF PROPERTY.
(a) FINDINGS — Congress finds and
declares that —
 (1) the regulation of intrastate transportation of property by the States has —
(A) imposed an unreasonable burden on interstate commerce;
 (B) impeded the free flow of trade, traffic, and transportation of interstate commerce; and
(C) placed an unreasonable cost on the American consumers; and
 (2) certain aspects of the State regulatory process should be preempted.
* * *
 (c) TRANSPORTATION BY MOTOR CARRIER — Section 11501 is amended by adding at the end the following new subsection:
"(h) PREEMPTION OF STATE ECONOMIC REGULATION OF MOTOR CARRIERS —
 "(1) GENERAL RULE — Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law regulated to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4) of this title) or any motor private carrier with respect to the transportation of property.
"(2) MATTERS NOT COVERED — Paragraph (1) —
 "(A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization; and
 "(B) does not apply to the transportation of households goods.
(3) STATE STANDARD TRANSPORTATION PRACTICES —
"(A) CONTINUATION — Paragraph (1) shall not affect any authority of a State, political subdivision of a State, or political authority of 2 or more States to enact or enforce a law, regulation, or other provision, with respect to the intrastate transportation of property by motor carriers, related to —
"(i) uniform cargo liability rules,
 "(ii) uniform bills of lading or receipts for property being transported,
"(iii) uniform cargo credit rules, or
 "(iv) antitrust immunity for joint line rates or routes, classifications and mileage guides, if such law, regulation, or provision meets the requirements of subparagraph (B).
 "(B) REQUIREMENTS — A law, regulation, or provision of a State, political subdivision, or political authority meets the requirements of this subparagraph if —
 "(i) the law, regulation, or provision covers the same subject matter as, and compliance with such law, regulation, or provision is no more burdensome than compliance with, a provision of this subtitle or a regulation issued by the Interstate Commerce Commission or the Secretary of Transportation under this subtitle; and
 "(ii) the law, regulation, or provision only applies to a carrier upon request of such carrier.
 "(C) ELECTION — Notwithstanding any other provision of law, a carrier affiliated with a direct air carrier through common controlling ownership may elect to be subject to a law, regulation, or provision of a State, political subdivision, or political authority under this paragraph."
 (d) EFFECTIVE DATE — This section and the amendments made by this section shall take effect on January 1, 1995; except that with respect to the State of Hawaii the amendment made by subsection (c) shall take effect on the last day of the 3-year period beginning on the date of the enactment of this Act.
As can be seen from the above, Section 601 preempts State regulation of prices, routes and services by all motor carriers which are not specifically exempt. Conversely, matters which do not constitute prices, routes and services remain subject to State regulation. Thus, for example, the authority to regulate safety, financial responsibility relating to insurance, transportation of household goods, vehicle size and weight, and hazardous materials routing remain subject to regulation by the State.
However, the State may not regulate its unaffected matters or areas so as to de facto regulate prices, routes or services in preempted areas. Further, any preexisting Federal regulations on State unaffected authority remain intact.
Section 601 does not preempt the ability of a State to issue a certificate or other documentation (in written or electronic form) demonstrating that the carrier complies with State requirements which are not preempted. Likewise, the motor carrier preemption provision does not preempt State regulation of garbage and refuse collectors since, under I.C.C. case law, garbage and refuse are not considered "property".
Conversely, the preemption does affect the transportation of property by motor carriers of passengers. Thus, when a motor carrier of passengers is transporting non-exempt property in intrastate commerce, there is no jurisdiction by the State regulatory body over price, route or service for any of the property being transported. This is true regardless of whether the property being transported is in the same vehicle moving passengers.
Section 601 further permits continued State regulation over four enumerated standard transportation practices, but in an qualified manner. The four areas are uniform cargo liability rules, uniform bills of lading or receipts for property being transported, uniform cargo credit rules and antitrust immunity for joint line rates or routes, classifications and mileage guides. With regard to these areas, State regulatory authority is limited in two respects.
First, a State may only regulate in these four areas in a manner that is no more burdensome than a Federal regulation on the same subject matter. Second, none of these regulations shall apply to any carrier that does not wish to be subject to such regulations.
The impact of Section 601 on taxation will be to eliminate the asset value of the operating authority of those affected motor carriers which should allow carriers to claim write-offs under current tax law. It should allow the State to issue certificates to preserve existing carrier tax advantages such as property and sales tax. We turn now to your questions.
Initially, you ask which Louisiana state taxes and fees provided for in R.S. 47:1001 and 45:1171 will be preempted by Section 601. R.S. 47:1001 imposes a state license tax on motor carriers for the privilege of engaging in business in this State at the rate of two percent (2%) of the gross receipts from its intrastate business.
One could argue that this tax is preempted to the extent that it regulates prices, routes and/or services. However, a review of the Conference Report accompanying the Act reveals the following language, to wit:
 ". . . and nothing in this amendment is intended to change the application of State tax laws to motor carriers."
Based on the above, it is the opinion of this office that the license tax imposed on motor carriers pursuant to R.S. 47:1001 is not impacted by Section 601. See also State v. El RitoTransportation Co., 190 So. 803 (La. 1939) which held that a tax based on gross receipts of intrastate transportation does not constitute a burden on interstate commerce.
R.S. 45:1177 imposes a state fee (not a tax) for the inspection, control, and supervision of the business, service and rates of motor carriers. The fee is directly proportionate to the carriers' gross receipts. While the Conference Report clearly states that Section 601 does not change the application of State tax laws to motor carriers, it is silent as to its effect on fees. It is the opinion of this office that if the fees do not regulate the preempted areas of prices, routes and services, they would not be abated. However, to the extent the imposition of the fee(s) constitutes a regulation of these preempted areas, the fees must, likewise, be preempted. Further, for the four standard transportation practices, discussed supra, fees may only be assessed if the carriers so choose. In the event a fee in question pertains to both an unaffected and a preemptive area, only that portion of the fee corresponding to the preempted area would be abated.
You next question the effect Section 601 will have on the powers vested with PSC. As you are aware, the broad and sweeping powers and duties of the PSC are enumerated in Article IV, Section 21(B) of the Louisiana Constitution of 1974:
 "(B) Powers and Duties. The commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law."
See also R.S. 45:161, et seq.
The question of what or who is a common carrier, vel non, is one primarily of fact to be determined by the PSC, subject to review by the courts. See Crowell Spencer Lumber Co., Inc. v.Louisiana Public Service Commission, et al.,102 So. 866 (La. 1925).
With this in mind, you ask which of the following powers still remain with the PSC:
 A. Annual financial statements to determine financial/fiscal fitness. It is the opinion of this office that Section 601 does not preempt the State's authority to require said annual financial statements.
 B. To regulate the transportation of garbage, refuse, and waste material and to define that transportation of such material which is not affected by federal provisions. It is the opinion of this office that the PSC is not preempted by Section 601 in its regulation of these areas. However, as previously noted, it may not use the regulations to de facto regulate prices, routes or services in preempted areas. In addition, the PSC will still be subject to any preexisting Federal regulations in these areas. We further opine that the PSC may define "garbage, refuse, and waste material" for purposes of the exemption. It should be noted that Congress considered legislating a definition of "garbage, refuse and waste material" in H.R. 5123; however, the bill failed to pass.
 C. To require carriers to carry documentation. It is the opinion of this office that the PSC retains the authority to require motor carriers to carry documentation relating specifically to those areas which are unaffected by Section 601. Further, for the four qualified areas, should the carrier wish to be subject to State regulatory authority, documentation may be required.
 D. Assessment of application fees for certification of operators in the State. It is the opinion of this office that Section 601 does not preempt the ability of the State to issue a certificate or other documentation (in written or electronic form) demonstrating that the carrier complies with State requirements which are not preempted by said Section.
 E. To issue certificates or to affect the operation of motor carriers in the regulation and/or enforcement of safety, given the fact that the PSC does not currently regulate this area. It is the opinion of this office that Section 601 does not preempt the State's authority to regulate and/or enforce safety, including the authority to issue certificates in connection therewith. The fact that the PSC currently does not involve itself in this area would have no bearing on the nonpreemptive status of Section 601. Caution should be exercised to insure that certification in this area does not constitute a de facto regulation of preempted areas.
 F. To require all motor carriers, including private carriers, to participate in a registration program. It is the opinion of this office that the PSC may conduct a registration program, but only insofar as it affects or applies to those areas which are not preempted by Section 601. The inclusion of private carriers must be on a non-discriminatory basis that does not favor Louisiana intrastate carriers over interstate carriers.
 G. To issue a certificate based on fitness. It is the opinion of this office that Section 601 does not preempt the PSC from the authority to issue a certificate based on financial fitness.
Your final question asks what would be the status of state taxes and fees currently being collected, as of the effective date of Section 601 (i.e. January 1, 1995). As previously noted, the license tax provided for in R.S. 47:1001 is not impacted by Section 601. The fee currently being collected pursuant to R.S.45:1177, to the extent it constitutes a charge on gross receipts related to preempted areas, shall be preempted. It is the opinion of this office that this preemption shall commence on the effective date of Section 601 — i.e., January 1, 1995.
Trusting this opinion has satisfactorily answered your inquiries, I am
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: _________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/Rob3:bb
0419R
cc: Ken Adams
Carolyn DeVitis Cathy F. Gautreaux Geneva Landrum
Honorable Ron Landry State Senator P.O. Box 94183 Capitol Station Baton Rouge, LA 70804
Date Received: 10-03-94
Date Released:
ROBERT E. HARROUN, III ASST. ATTORNEY GENERAL